IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE V. ANTEROLA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY JOSEPH MAZZA, | : | NO. 11-CV-6531 |
| Defendant. | : | |

**FILED**

MAY 11 2012

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM OPINION

TIMOTHY R. RICE                                           May 11, 2012
U.S. MAGISTRATE JUDGE

The parties dispute the extent of Plaintiff's damages from a November 7, 2009 car

accident caused by Defendant's negligence.  For the following reasons, and after a May 1, 2012

bench trial, I will grant Plaintiff relief and enter judgment against Defendant in the amount of

$115,000.

## Introduction

For the past twenty years, Plaintiff Denise Anterola has endured a life of physical pain

and misfortune, punctuated with repeated attempts to rebuild her life.  The issue here is whether

injuries she suffered in a car accident on November 7, 2009 caused irrevocable mental and

physical harm that has essentially destroyed her life as she knew it before November 2009.

Anterola maintains the November 2009 accident aggravated her deteriorating back and

neck condition and transformed her into a "nasty" recluse who endures constant pain.  Defendant

Anthony Mazza contends, however, Anterola's symptoms stem from myriad injuries and

surgeries unrelated to the 2009 accident, and suggests Anterola exaggerates the impact of the

2009 accident.

For the following reasons, I find Anterola has suffered physical pain caused by the November 2009 accident that has resulted in past and future medical expenses, and also has meaningfully diminished her enjoyment of life. For example, before the accident, Anterola was an avid walker, regular dancer, and active grandmother. Those pleasures, however, vanished after the November 2009 accident.

Accordingly, I award damages of $5,352.89 for past medical expenses, $30,000 for future medical expenses, and $79,647.11 for pain, suffering, and loss of enjoyment of life's pleasures. My damage award is limited by Anterola's chronic degenerative conditions that have contributed to her physical deterioration.

## Factual Findings[1]

A.    November 7, 2009 Car Accident

On November 7, 2009, Anterola was a passenger in Grace Hoffman's car when it was struck from behind by Mazza's car at an intersection in King of Prussia, Pennsylvania. Anterola, who was wearing a seatbelt, felt her neck "snap" during the accident. A photograph of Hoffman's vehicle reveals only modest damage to the rear bumper. Shaken, Anterola called 911. When the police and paramedics arrived, she refused to go to the emergency room because she needed to pick up a FedEx package for her employer. She assured the paramedics she would seek medical treatment with her primary care physician.

---

[1] In addition to resolving legal issues, my role in a bench trial includes evaluating the credibility of witnesses and weighing the evidence. See Fed. R. Civ. P. 52(a); Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 856 (1982).

My factual findings are based on the testimony at trial and the exhibits submitted by the parties, including the expert reports and Anterola's medical records and bills.

After the accident, Anterola and Hoffman completed their errands, picking up the package and going to the mall so Hoffman could apply for a job. They returned to Hoffman's home, where Anterola took non-prescription painkillers and applied heat and ice to her neck and back -- techniques she had learned when treating previous back and neck injuries. Hoffman then drove Anterola to the house where she was staying, and Anterola used a whirlpool, hoping to relieve her pain.

B.      Past Medical History

A brief summary of Anterola's medical history is necessary to understand and assess her injuries from the 2009 car accident. She had back surgery in 1995 and neck surgery in 1997. Three months after her 1997 surgery, Anterola injured her back in a car accident. During this time period, Anterola was on a weight-loss regimen, which she continued after the 1997 car accident, losing approximately 180 pounds through diet and exercise. Anterola began to lose weight after her physicians warned her that her weight contributed to her neck and back problems.

In April of 2005, Anterola suffered a seizure while driving, resulting in an accident in which she broke both of her lower legs. She had surgery to repair the fractures and spent more than six months in a rehabilitation hospital. Anterola had further knee surgery in the summer of 2006. Although she fully recovered from the injuries, her physicians predict she will eventually need knee replacements. In 2007, Anterola began complaining of problems with falling. Her physicians disagreed about the cause of the falls and never reached an official diagnosis.

In the months preceding the November 2009 car accident, Anterola experienced some back problems, but her pain was not severe. On July 20, 2009, Anterola complained of "tight"

3

muscles to Dr. David Tabby, a neurologist, but she had no "significant back pain." On October 1, 2009, Dr. Steven Yocom, a neurosurgeon, examined Anterola to determine the cause of her falls. His records reveal she had "no real back pain," but some occasional neck pain extending into her thoracic spine. Dr. Yocom noted that an August 4, 2009 MRI of Anterola's spine showed "fairly significant degenerative disc disease." An October 15, 2009 MRI revealed degenerative and postoperative changes, but no spinal cord compression. On October 23, 2009, Dr. Alan Turtz, a neurosurgeon, found Anterola had "chronic neck and back pain" and reviewed an MRI showing "advanced degenerative changes." Anterola testified she had stiffness in her neck and back before the November 7, 2009 car accident, but no pain. I find Anterola's testimony credible because she did not seek treatment for neck or back pain until after the November 2009 car accident.

C.    Injuries from November 2009 Accident

In the days following the accident, Anterola continued to self-treat her neck and back pain by alternating heat and ice. When the pain continued and worsened, she sought treatment with a primary care physician, Dr. Reena Gajraj, on November 24, 2009. Dr. Gajraj prescribed medication and ordered imaging tests. Although Anterola waited seventeen days to seek treatment for her injuries, I do not find her delay in seeking care undermines her credibility regarding the extent of her pain. Given Anterola's history of neck and back problems, I find she reasonably believed she could treat her pain at home with heat, ice, and non-prescription medication. She consulted with a physician when such conservative treatments proved ineffective.

On December 1, 2009, Anterola sought treatment at Germantown Pain Management. She

was diagnosed with a strain and sprain of her cervical and thoracic spine and left shoulder. Anterola discontinued treatment at Germantown Pain Management after two appointments because she was unhappy with the care.

On December 15, 2009, Anterola saw Dr. Randall Smith, an orthopedic surgeon, who diagnosed her with cervical, thoracic, and lumbar spine sprain and strain, which caused or aggravated her underlying disc degeneration. On Dr. Smith's recommendation, Anterola attended physical therapy from December 2009 through January 2011. Anterola stopped physical therapy only when she could no longer afford the co-payments. She continues to receive treatment from Dr. Smith, including medication. Dr. Smith also has recommended additional physical therapy and injection therapy. Mazza's expert, Dr. David Pashman, opined that Anterola suffered a strain and sprain of her cervical, thoracic, and lumbar spine and left shoulder, and found she had pre-existing degenerative disc disease in her cervical and lumbar spine.

Anterola saw Dr. John Esterhai, an orthopedic surgeon who treats her knee problems, on January 19, 2010. His records do not mention the car accident or neck or back pain. Anterola saw Dr. Julie Hlavac, her primary care physician, on January 27, 2010, but the records do not indicate Anterola complained of pain. Mazza maintains the absence of complaints by Anterola to Dr. Esterhai and Dr. Hlavac undermines Anterola's credibility as to the extent of her pain. Anterola said if she did not discuss her neck and back pain with Dr. Esterhai and Dr. Hlavac, it was because Dr. Smith was treating her pain. I find Anterola's statements credible, especially since she was undergoing treatment with Dr. Smith at the time of the visits with Dr. Esterhai and Dr. Hlavac. For example, on January 26, 2010, just one week after her visit with Dr. Esterhai and one day before her visit with Dr. Hlavac, Anterola saw Dr. Smith for treatment of her

5

continuing neck and back pain.

D.    February 21, 2011 Car Accident

Anterola was involved in another car accident on February 21, 2011.[2]  She was examined at the emergency room where she complained of neck pain.  I credit Anterola's testimony that her pain was the same pain she had been experiencing since the 2009 accident, and that the 2011 accident did not affect the severity of her pain.  Anterola's treatment for her neck and back pain did not change after the 2011 accident.

E.    Daily Activities

Despite her medical struggles, Anterola was physically active before the November 7, 2009 accident.  Anterola frequently walked five miles and often walked more than eight miles. Anterola, a cancer survivor, participated in many walkathons for charitable organizations such as the American Cancer Society.  She was forced to stop walking after her 2005 car accident, but after nearly a year of rehabilitation, Anterola resumed her walking regime.  Anterola's friend and neighbor, Nancy Maguire, confirmed she often saw Anterola walking around the neighborhood. Despite breaking both legs in 2005 and requiring knee surgery in 2006, Anterola completed a five-mile American Cancer Society walk in October of 2006.  She also completed a walkathon for the Multiple Sclerosis Society, despite the hilly route.  In the summer of 2009, just months before the accident, Anterola hiked in Yellowstone National Park.  Fred D'Amico, Anterola's

---

[2] Anterola has not filed a lawsuit for the 2011 car accident, even though the impact in that car accident severely damaged her car and was apparently greater than the impact in the 2009 car accident.  Anterola's decision not to sue for a more serious car accident undermines Mazza's theory that Anterola is exaggerating the extent of her injuries for the purposes of this lawsuit.  If Anterola were exaggerating her injuries in an attempt to obtain more money from this lawsuit, I believe she also would have filed suit after the more serious 2011 accident.

friend, testified Anterola cared for his bedridden wife, who suffers from Parkinson's disease, while he was out of town in August 2009. He explained that caring for his wife was physically strenuous because it involved extensive lifting and helping his wife transfer to the chair or toilet. Since the accident, Anterola has been unable to engage in such physical activity. As a result, she has gained approximately twenty pounds. She also has been physically unable to perform certain household chores, including cleaning, cooking, and carrying groceries.

Anterola also enjoyed spending time with her grandchildren and friends before the accident. She often played with her grandchildren, took them on walks, and visited museums with them. Since the accident, however, Anterola's relationship with her grandchildren has suffered, and she is no longer able to take them out or get down on the floor to play. Additionally, Anterola's relationship with her youngest grandson, who was born after the accident, is not as strong as her relationships with her other grandchildren, because she is unable to interact with him in the same way. Anterola now describes herself as "socially withdrawn" and "nasty." D'Amico and Maguire confirmed Anterola's personality has changed since November 2009.[3] Maguire stated Anterola is depressed and easily agitated. D'Amico confirmed Anterola has less energy and seems unhappy. Anterola stated she rarely goes out with her friends and can no longer dance at parties. Maguire testified Anterola has become a "homebody" since the accident.

---

[3] I find both Maguire and D'Amico to be credible witnesses based on their demeanor. Additionally, their testimony corroborated Anterola's testimony and they did not exaggerate Anterola's activities. Maguire testified Anterola attended one "beef and beer" function and took a vacation after her accident. She also stated she and Anterola recently arranged a few outings with their grandchildren. D'Amico testified that he and Anterola sometimes watch movies together at home. Furthermore, both Maguire and D'Amico acknowledged they had limited relationships with Anterola before 2009.

7

F.      Claimed Damages

Anterola has paid $461.59 for co-payments for her prescription medication.  The

automobile insurance personal injury coverage of $5,000 has been exhausted, and Anterola's

healthcare insurer holds a lien for $4,891.30.  Dr. Smith estimates Anterola will incur future

medical expenses of $10,000 per year.  The future medical expenses calculation includes co-

payments for physical therapy, diagnostic tests, doctor visits, and injection therapy.

## Conclusions of Law

The parties agree Mazza is liable for the car accident.  Therefore, I need only resolve the

extent of Anterola's damages.

In Pennsylvania,[4] a defendant is liable for all of a plaintiff's damages caused by his

negligence, including damages for the aggravation of a pre-existing condition.  See Offensend v.

Atl. Ref. Co., 185 A. 745, 747 (Pa. 1936); Boushell v. J.H. Beers, Inc., 258 A.2d 682, 684 (Pa.

Super. Ct. 1969).  This is so even if the harm is not foreseeable.  See Tabor v. Miller, 389 F.2d

645, 647-48 (3d Cir. 1968); Fretts v. Pavetti, 422 A.2d 881, 885 (Pa. Super. Ct. 1980); Wood v.

Lit Bros., 94 A.2d 69, 70 (Pa. Super. Ct. 1953).

Accordingly, Mazza is liable for Anterola's injuries despite her pre-existing neck and

back problems.  Anterola had recovered from her previous back and neck surgeries.  Although

she had some tenderness and tightness in her neck and back, as well as degenerative changes,

Anterola did not have significant pain until after the November 2009 accident.  The car accident,

which might not have resulted in significant injuries to most people, aggravated Anterola's

---

[4] The parties agree Pennsylvania substantive law applies in this diversity case.  See Erie
R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

impairments. Before the accident, Anterola's neck and back problems caused only mild

discomfort.[5] As Dr. Smith opined, the strain and sprain Anterola experienced as a result of the

accident aggravated her underlying disc degeneration, causing her neck and back problems to

progress from a minor nuisance to debilitating pain.

Thus, Mazza is liable for all of the damages Anterola incurred as a result of the car

accident, including her medical expenses of $5,352.89, see Moorhead v. Crozer Chester Med.

Ctr., 765 A.2d 786, 789 (Pa. 2001), abrogated on other grounds by Northbrook Life Ins. Co. v.

Commonwealth, 949 A.2d 333 (Pa. 2001), future medical expenses, see Pratt v. Stein, 444 A.2d

674, 697 (Pa. Super. Ct. 1982), and pain, suffering, and loss of enjoyment of life, see Burgan v.

City of Pittsburgh, 96 A.2d 889, 891 (Pa. 1953).[6]

Anterola is entitled to $30,000 in future medical expenses. I limit her damages for future

medical expenses to $30,000, because I conclude some of her back and neck pain was inevitable

due to her chronic degenerative condition. Although she was not experiencing significant back

pain before the accident, Anterola reported some tenderness and tightness to her physicians.

Moreover, an MRI taken one month before the accident revealed Anterola had widespread

degenerative changes. In time, Anterola likely would have needed at least some of the

recommended treatments, even if she had not been injured in the 2009 accident.

Finally, I award Anterola $79,647.11 for pain, suffering, and loss of enjoyment of life.

---

[5] Although Mazza points out Anterola sought treatment for unexplained falls before the accident, Anterola's physicians disagree on the cause of her falls. Even if back problems caused her falls before the accident, Anterola did not have severe pain until after the accident. Additionally, Anterola does not allege the car accident affected her problems with falling.

[6] Anterola does not seek damages for lost wages.

As a result of the car accident and her subsequent decline in health, Anterola has been unable to perform many of the activities she enjoyed before the accident.[7]  Once an enthusiastic and avid walker, Anterola can no longer enjoy her frequent walks for exercise or participate in charitable walkathons.  She previously participated in the walkathons not only for physical fitness, but also as a reminder of all she has overcome, including cancer and severe injuries from the 2005 accident.  Anterola is emotional about her twenty-pound weight gain after she worked hard at losing 180 pounds to improve her physical and mental health.

Moreover, Anterola's personal relationships have suffered as a result of her physical injuries.  She has become, in her own words, "socially withdrawn" and "nasty."  She has experienced mood shifts as a result of her pain.  D'Amico and Maguire both described her as depressed, and Maguire mentioned Anterola is more easily agitated.  Similarly, her relationships with her young grandchildren have suffered because she can no longer play with them on the floor or take them to the museum because of her pain.  Her personality changes have also impacted her relationships with her grandchildren.  Her social life has greatly diminished; she mostly stays at home.  She rarely goes out with her friends or family, and she can no longer dance at parties and fundraisers, an activity she used to enjoy.

Accordingly, I enter judgment for Anterola in the amount of $115,000.

An appropriate order follows.

---

[7] Mazza contends Anterola's inability to take long walks is partially due to her knee problems. I disagree. Anterola continued to walk through the fall of 2009 despite the severe injuries to her knees in 2005 and Dr. Esterhai's opinion that she would eventually need a knee replacement. Despite her knee problems, she was able to complete a walk for the Multiple Sclerosis Society on a hilly route.